Richard R. Best
Kristina Littman
John O. Enright
Victor Suthammanont
Morgan B. Ward Doran
Jon Daniels
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-5674 (Suthammanont)
Email: SuthammanontV@sec.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

-- against --

**APOSTOLOS TROVIAS,**

Defendant.

---

**21 Civ. _____ ( )**

**ECF Case**

**COMPLAINT**
**AND JURY DEMAND**

---

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Apostolos Trovias ("Trovias") alleges as follows:

## SUMMARY OF THE ALLEGATIONS

1.      From at least December 2016 through February 2021, Trovias—operating under

the pseudonymous online avatar "TheBull"—engaged in a deceptive scheme to offer and sell

what he called "insider trading tips" on Dark Web marketplaces to purchasers seeking an unfair

advantage when trading securities in the public markets.

2.      The Dark Web is a part of the internet that requires specialized software to access

and is specifically designed to facilitate anonymity by obscuring users' identities, including by

hiding users' internet protocol addresses. The anonymity provided by the Dark Web allows users to sell and purchase illegal products and services, including illicit drugs, stolen identities, hacking services, and in this case, "insider trading tips."

3.      Trovias claimed that his tips consisted of order-book data from a securities trading firm—purportedly material, nonpublic information—that was provided to him by an employee of the trading firm. These statements were either materially false and misleading and made in furtherance of a scheme to deceive purchasers who wanted to trade on inside information, or if true and Trovias's source in fact existed and provided some or all of the tips from actual order-book data (or if Trovias misappropriated the order-book data himself), Trovias engaged in a fraudulent scheme to sell material, nonpublic information that he knew or was reckless in not knowing was obtained in violation of a duty of trust and confidence for a personal benefit to the tippers (including himself).

4.      Trovias sold those tips through weekly and monthly subscriptions, as well as through one-off sales. Over the course of his scheme, Trovias sold over 100 subscriptions to investors via the Dark Web, and purchasers traded securities on the basis of tips that Trovias provided to them.

5.      In addition to order-book information, and in keeping with his scheme to monetize what he claimed to be material inside information, Trovias sold the pre-release earnings reports of publicly traded companies—material, nonpublic information—that he knew or was reckless in not knowing were obtained in violation of a duty of trust and confidence for personal benefit.

6.      Unfortunately for Trovias, among his customers were undercover Internal Revenue Service ("IRS") and Federal Bureau of Investigation ("FBI") special agents to whom he

sold subscription plans and earnings reports and with whom he discussed creating a new Dark Web marketplace specifically designed to facilitate the illicit exchange of inside information.

## VIOLATIONS

7.      By engaging in the conduct set forth in this Complaint, Defendant committed securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

8.      Unless Defendant is permanently restrained and enjoined, he will continue to engage in the acts, practices, and courses of business set forth in this Complaint, and in acts, practices, and courses of business of similar type and object.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

9.      The Commission brings this action pursuant to the authority conferred upon it by Sections 21(d)(1) and (d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and (d)(5)] seeking a final judgment: (a) permanently restraining and enjoining Defendant Trovias from engaging in the acts, practices, and courses of business alleged herein; (b) permanently restraining and enjoining Defendant from establishing and/or operating any website that permits the offer, sale, or purchase of nonpublic information concerning the issuers of publicly traded securities; (c) ordering the Defendant to disgorge with prejudgment interest all ill-gotten gains from the conduct alleged in this Complaint pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5), and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and 78u(d)(7); and (d) imposing civil money penalties on Defendant pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] or Section 21A(a)(2) of the Exchange Act [15 U.S.C. § 78u-1(a)(2)].

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e),

21A(a)(1), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1(a)(1) and 78aa].

Defendant, directly or indirectly, made use of the means or instruments of transportation or

communication in, and the means or instrumentalities of, interstate commerce, or of the mails, in

connection with the transactions, acts, practices, and courses of business alleged herein.

11.     Venue is proper in the Southern District of New York pursuant to Section 27 of

the Exchange Act [15 U.S.C. § 78aa]. Among other things, Trovias offered and sold "insider

trading" tips and a pre-release earnings report to at least one customer in this district, including

sales to an FBI agent.

## DEFENDANT

12.     **Trovias**, age 30, is a citizen of Greece whose last known residence is in Greece.

Since at least 2016, Trovias has maintained vendor accounts on several Dark Web marketplaces.

Trovias used the online avatar "TheBull" on these marketplaces, where he offered and sold what

he claimed were "insider trading tips" that he obtained from an insider at a trading firm.

## BACKGROUND ON THE DARK WEB

13.     The Dark Web is a segment of the internet accessed through specialized software.

The Dark Web is comprised of multiple overlay networks, or "darknets," which are designed to

ensure users can access the internet securely and anonymously.

14.     Darknets are physically connected to the regular internet, but are not accessible

without specialized software. Specialized software is required because darknets use multistep

routing and layered encryption. Together these routing and encryption techniques obfuscate the

internet protocol address ("IP address") information that is typically used to identify users'
locations. They also make the intercepted content of any communications difficult to read.

15.     The most prominent darknet is The Onion Router ("Tor") network. Unlike the
"surface web," which employs a number of different top-level domains for its websites (*e.g.*,
".com," ".gov," and ".edu"), all Tor websites use ".onion." The Tor network employs an
approach that first encrypts and then routes all internet traffic through numerous peer-to-peer
routers, known as nodes or relays. As data moves from node to node, a layer of encryption that
protects the information being sent is peeled away. The result is that no single node is able to
read both the originating IP address and the content of the message.

16.     Due to its dominant market share, the Tor network is home to the bulk of the Dark
Web's marketplaces. Similar in structure and appearance to surface web auction websites, Dark
Web marketplaces allow vendors to sell goods and services in return for a percentage of the
proceeds. Because of their perceived anonymity and security, Dark Web marketplaces are
popular destinations for users who wish to traffic in illegal products and services.

17.     Bitcoin and other digital assets are the primary mediums of exchange on Dark
Web marketplaces because of the anonymity such assets appear to offer.

## FACTS

**A.      Trovias Offered and Sold "Insider Trading Tips" on the Dark Web**

*(i)      AlphaBay*

18.     AlphaBay was a Dark Web marketplace, operated on the Tor network, through
which users could offer and purchase a variety of illegal goods and services. The FBI shut down
AlphaBay in July 2017.

19.     Trovias joined AlphaBay on December 5, 2016, employing the username
"TheBull."

5

20.     At the time, AlphaBay offered users various categories of goods and services, including "Drugs & Chemicals," "Counterfeit Items," "Weapons," and "Fraud."

21.     Two days after joining AlphaBay, Trovias posted this listing in AlphaBay's "Fraud" category:



22.     Trovias's listing was entitled "Hedge Fund Insider | Stock Trade Tips $ Promo Price $" and offered "[i]nside trading tips coming from an actual office clerk working in a trading branch." He wrote that "[b]uying my service will [give] you an edge by knowing what the big boys are buying or selling."

23.     Trovias charged a promotional price of $29.95 per tip.

24.     In addition, in January 2017, Trovias began selling a monthly plan for access to his insider trading tips. Trovias advertised this service using language similar to the listing for individual tips; in particular he stated that the tips were inside information, came from an "actual

office clerk working in a trading branch," and would reveal "what the big boys are buying or selling."

25.    Trovias offered the plan for $299 per month.

26.    Trovias also offered a weekly plan for $99.95, which was identical to the monthly plan except for the differences in duration and price.

27.    All of Trovias's sales on AlphaBay (as well as the other markets described herein) were payable in bitcoin.

28.    Trovias's advertisements on AlphaBay was accessible at all times from the United States.

29.    Trovias's AlphaBay advertisements either were materially false and misleading insofar as Trovias did not actually obtain information concerning institutional trading data from an insider at a trading firm, or if his statements were true, Trovias offered to sell, for securities trading purposes, material, nonpublic information that he knew, recklessly disregarded, or had reason to know was obtained in violation of a duty of trust and confidence for a personal benefit based on the allegations described herein, including in Paragraphs 21-22, 24, 32, 42, 49, 58, 62, 67, 73-74, 85, and 88.

30.    In June 2017, Trovias sold a weekly plan to an undercover IRS agent ("IRS Agent") via his AlphaBay listing. He later also sold a monthly plan to the IRS Agent. The IRS Agent was located in the United States when communicating with Trovias and the IRS Agent confirmed to Trovias in a June 2017 email that he was based in the U.S.

31.    Beginning on June 16, 2017, Trovias provided daily tips to the IRS Agent in emails that stated the ticker symbol of the stock, whether the trade should be a long position (a purchase) or short position (a sale), and offered a confidence level for the tip ranging from 0 (for

low expected returns) to 10 (high expected returns). For example, the below tip concerns PTC

Therapeutics, Inc., a U.S. company with offices throughout the country whose securities trade on

the NASDAQ exchange (Ticker: PTCT):

## Tip

Received: ↩🔒 June 16, 2017 6:15 AM

From: **Geobull geobull@protonmail.com**

To: ██████████████████████████

Hello there,

The tip for today is

Ticker: PTCT(NASDAQ) I SHORT I SELL AFTER THE OPENING I CONFIDENCE LEVEL 8

Confidence level is a 1-10 scale i provide alongside the tip. The higher it is, the higher the expected return of the tip might be

Sent with ProtonMail Secure Email.

32.     During his correspondence with the IRS Agent, Trovias confirmed that the tips

came from an insider with access to a "trading branch's" order book. In later correspondence

with the FBI, he indicated that he was a "vendor" for "someone processing orders for a fund."

Trovias also told an AlphaBay customer, "Purchaser 1," that "[t]he tips are coming from a

company's order book and are based on big buy/sell orders." These statements either were

materially false and misleading because Trovias knew or was reckless in not knowing that he did

not obtain information from an insider processing institutional trading orders, or to the extent

that these statements were true, they evidence that Trovias knew, recklessly disregarded, or had

reason to know that the tips were obtained in violation of a duty of trust and confidence for a

personal benefit.

33.     In addition, on June 13, 2017, Trovias sent a tip concerning Ominto, Inc. ("OMNT"), a U.S. company whose securities trade on the NASDAQ exchange (Ticker: OMNT), to another AlphaBay customer, "Purchaser 2," through AlphaBay's messaging system. Trovias's tip alerted Purchaser 2 to buy after the NASDAQ market opened.

34.     Two days later, on June 15, 2017, Purchaser 2 messaged Trovias and said that he had made approximately 8% on his purchase of Ominto stock—demonstrating that Purchaser 2 had purchased Ominto stock on the basis of the tip Trovias provided as part of his fraudulent scheme to monetize actual and/or the appearance of actual inside information.

35.     On June 14, 2017, Trovias sent a tip concerning Aeglea Bio Therapeutics Inc. ("AGLE"), a U.S. company whose securities trade on the NASDAQ exchange (Ticker: AGLE), to Purchasers 1 and 2 through AlphaBay's messaging system. Trovias's tip advised Purchasers 1 and 2 to purchase the stock after the NASDAQ market opened.

36.     Two days later, on June 16, 2017, Purchaser 1 messaged Trovias, indicated that she had purchased AGLE's stock, and stated that Trovias's tips "are great"—demonstrating that Purchaser 1 had traded on the basis of a tip Trovias provided as part of his fraudulent scheme to monetize actual and/or the appearance of actual inside information.

37.     Three days after that, on June 19, 2017, Purchaser 2 confirmed in a message to Trovias that she had purchased AGLE's stock—demonstrating that Purchaser 2 had traded on the basis of a tip that Trovias had provided pursuant to his fraudulent scheme to monetize actual and/or the appearance of actual inside information.

38.     On the same day, June 19, 2017, Trovias sent "Purchaser 3" a tip concerning Westmoreland Coal Co. ("WLB"), a U.S. company with locations throughout the country whose

securities trade on the NASDAQ exchange (Ticker: WLB). Trovias advised Purchaser 3 to buy the stock after the market opened.

39.     The next day, on June 20, 2017, Trovias asked Purchaser 3 through AlphaBay's messaging system whether she still held WLB, and, on June 24, 2017, Purchaser 3 confirmed that she still held WLB—demonstrating that Purchaser 3 had purchased WBL shares on the basis of a tip Trovias provided pursuant to his fraudulent scheme to monetize actual and/or the appearance of actual inside information.

40.     On June 27, 2017, Trovias sent a tip concerning Biondvax Pharmaceuticals Ltd. ("BVXV"), an issuer traded on the NASDAQ exchange (Ticker: BVXV), to "Purchaser 4." Trovias advised Purchaser 4 to sell BVXV short after the NASDAQ opening.

41.     Two days later, on June 29, 2017, Purchaser 4 confirmed in a message to Trovias that she "did just what you said" and sold shares of BVXV based on Trovias's tip— demonstrating that Purchaser 4 had sold BVXV stock short on the basis of a tip Trovias provided pursuant to his fraudulent scheme to monetize actual and/or the appearance of actual inside information.

42.     Trovias's tips concerning OMNT, AGLE, WLB, and BVXV either were materially false and misleading because they did not actually reflect information obtained from the order book of a trading firm, or to the extent that Trovias did obtain trading information concerning those issuers from an insider at a trading firm who disclosed information from the firm's order book, Trovias knew, recklessly disregarded, or had reason to know that the tips were material, nonpublic information that he obtained in violation of a duty of trust and confidence for a personal benefit.

43.     Between December 2016 and June 2017, Trovias sold 32 individual stock tips on AlphaBay, including tips for many U.S.-based issuers that trade on stock exchanges in the United States.

44.     Between January 2017 and June 2017, Trovias sold two of the monthly plans and two of the weekly plans.

45.     By June 2017, on a feedback page for his listings, Trovias had received "100% positive" ratings, and several customers other than Purchasers 1-4 said that they had profitably traded on tips Trovias provided.

*(ii)     Dream Market*

46.     Dream Market was another online Dark Web market that operated using the Tor network. It ceased operations on April 30, 2019.

47.     Following the seizure of AlphaBay, Trovias joined Dream Market in August 2017, and again used the username "TheBull."

48.     Like AlphaBay, Dream Market offered users various categories of goods and services, including "Drugs," "Hacking," and "Fraud."

49.     Between August 2017 and at least January 2019, Trovias posted listings in Dream Market's "Fraud" subcategory. Trovias's listings, substantially similar in appearance and identical in content to his AlphaBay posts, offered insider trading tips obtained from "an actual office clerk working in a trading branch" and represented that the tips were based on "what the big boys are buying and selling."

50.     Trovias's Dream Market advertisements either were materially false and misleading insofar as Trovias did not actually obtain information concerning institutional trading data from an insider at a trading firm, or if his statements were true, Trovias offered to sell

material, nonpublic information that he knew, recklessly disregarded, or had reason to know was

obtained in violation of a duty of trust and confidence for a personal benefit.

51.     On Dream Market, Trovias offered a single stock tip for $21, a weekly stock tip

plan for $94, and a monthly stock tip plan for $312.

52.     Trovias's advertisement on Dream Market was accessible at all times from the

United States.

53.     In April 2018, a user contacted Trovias about his posts through the Dream Market

internal messaging system. Unbeknownst to Trovias, the user was actually an undercover FBI

agent ("FBI Agent").

54.     Trovias later learned that the FBI Agent was based in the United States, and

Trovias claimed to the FBI Agent that he was also based in the United States.

55.     On April 30, 2018, Trovias offered to sell the FBI Agent located in the United

States a monthly stock tip plan for $320.

56.     On May 1, 2018, while located in the Southern District of New York, the FBI

transferred bitcoin worth $320 from a U.S. account to Trovias to pay for the monthly stock tip

plan.

57.     The next day, on May 2, 2018, Trovias began sending the FBI Agent daily tips.

58.     In messages with the FBI Agent, Trovias explained that the information

underlying his tips came from "money managers and a market maker."[1] This statement either

was false and misleading because Trovias knew or was reckless in not knowing that he did not

obtain information from an insider at money managers and a market maker, or to the extent that

---

[1]     A "market maker" is typically a large financial institution that helps create market
liquidity by purchasing and selling stocks in its own accounts so that purchasers and sellers have
a counterparty ready to fill orders when they are placed.

his statements were true, they evidence that Trovias knew, recklessly disregarded, or had reason to know that the tips were obtained in violation of a duty of trust and confidence for a personal benefit.

59.     Trovias sold tips through his posts on Dream Market to users other than the FBI Agent.

60.     On a feedback page for Trovias's listings, several users (not including the FBI Agent) indicated that they had purchased tips from Trovias and traded on the information.

*(iii)     Nightmare Market and ASAP Market*

61.     On March 29, 2019, in light of Dream Market's announcements concerning its impending closure, Trovias began posting his listing on Nightmare Market, another Dark Web market on the Tor network. Trovias continued to use "TheBull" username.

62.     Trovias posted three listings on Nightmare Market, again offering a single tip (for $21), a weekly plan (for $91), and a monthly plan (for $309). The listings, copying the language Trovias had used on the other Dark Web sites, advertised "inside trading tips" from an "actual office clerk working in a trading branch."

63.     Trovias's advertisement on Nightmare Market was accessible from the United States.

64.     Trovias's Nightmare Market advertisements either were materially false and misleading insofar as Trovias did not actually obtain information concerning institutional trading data from an insider at a trading firm, or if his statements were true, Trovias offered to sell material, nonpublic information that he knew or was reckless in not knowing were obtained in violation of a duty of trust and confidence for a personal benefit.

65.     Nightmare Market ceased operations in July 2019.

66.     On or about March 25, 2020, Trovias created a profile on ASAP Market, yet another Dark Web market on the Tor network, still using "TheBull" username.

67.     Trovias posted three listings on ASAP Market, offering a single tip (for $19.75), a weekly plan (for $78.75), and a monthly plan (for $344.75). The listings included the metatag[2] "#insidetrading" and advertised "Stock market insider tips coming directly from a market-maker's order books."

68.     Trovias's advertisement on ASAP Market was accessible from the United States.

69.     Trovias's ASAP Market advertisements either were materially false and misleading insofar as Trovias did not actually obtain information concerning trading data from an insider at a market maker, or if his statements were true, Trovias offered to sell material, nonpublic information that he knew or was reckless in not knowing were obtained in violation of a duty of trust and confidence for a personal benefit.

        *(iv)     Trovias's Daily Tips*

70.     From June 16, 2017, through at least March 6, 2020, Trovias provided tips to buy or sell particular stocks directly to the IRS Agent and the FBI Agent by emails and text messages. Both were located in the United States when they received the emails and text messages.

71.     The chart in Exhibit A summarizes Trovias's tips to the undercover federal agents and others, including the date of each tip, the ticker symbol each tip related to, whether the tip was to buy or sell, and Trovias's purported confidence level in the tip. Exhibit A includes an additional May 17, 2017 tip Trovias sent to purchasers of his tips.

---

[2]     A metatag is text embedded in a webpage's code designed to allow for easy searching but which does not typically appear on a webpage.

72.     Based on the allegations in Paragraphs 18-69, Trovias provided some or all of these tips to his other daily, weekly, and monthly customers that he obtained via AlphaBay, Dream Market, and Nightmare Market.

73.     Some or all of tips in Exhibit A either (1) were materially false and misleading because Trovias knew that he invented some or all of the tips or they otherwise did not reflect actual trading data of an institutional trading firm provided by an insider and that the information would be used in securities trading, or (2) to the extent that all or some of the tips that Trovias provided to his customers were in fact order-book data obtained from an insider at a trading firm, the tip was a disclosure of material, nonpublic information, and Trovias knew, recklessly disregarded, or had reason to know that the information that he provided concerning institutional purchases and sales was confidential and material, nonpublic information; that "the actual office clerk" (whether himself or a third party) had a duty of confidentiality not to disclose such information; that this information had been disclosed for a personal benefit; and that the information would be used in securities trading.

74.     To the extent that the tips Trovias provided to his customers were in fact order-book data obtained from an insider at a trading firm, Trovias knew, recklessly disregarded, or had reason to know that trading firms have policies prohibiting the disclosure of such information because it may disclose proprietary trading strategies and reflect orders that may have price and volume impacts on the market. Trovias demonstrated his awareness of the sensitive nature of this information when he wrote to the FBI agent on May 18, 2018, that his source "is really cautious of the information leaking to a lot of people."

**B.     Trovias Traded on Material, Nonpublic Information for His Own Benefit**

75.     In addition, to the extent that Trovias in fact obtained order-book data from an insider at a trading firm, Trovias traded, both on others' behalf and on his own, on the tips of

material, nonpublic information that he provided to Dark Web purchasers for his own benefit, based on at least the facts alleged in Paragraphs 76 through 84, 89, and 97 below.

76.     On approximately June 11 and 12, 2017, Trovias wrote to Purchaser 1 and offered to trade securities on Purchaser 1's behalf in exchange for a percentage of the returns.

77.     During the exchange, Trovias informed Purchaser 1 that he was "already working with quite a few people" to trade on their behalf in exchange for a percentage of the profit from such trading.

78.     On October 8, 2018, Trovias sent the FBI Agent a tip concerning Pennantpark Floating Rate Capital Ltd. ("PFLT"), a U.S. company whose securities trade on the NASDAQ exchange (Ticker: PFLT).

79.     On October 10, 2018, Trovias sent the FBI Agent a tip concerning Fluidigm Corp. ("FLDM"), a U.S. company whose securities trade on the NASDAQ exchange (Ticker: FLDM).[3]

80.     On October 12, 2018, Trovias sent the FBI Agent a tip concerning Heat Biologics Inc. ("HTBX"), a U.S. company whose securities are listed on the NASDAQ exchange (Ticker: HTBX).

81.     On October 14, 2018—six days after he had sent the PFLT tip, four days after he had sent the FLDM tip, and two days after he had sent the HTBX tip—Trovias wrote to the FBI Agent and stated that he had "capitalized on some FLDM profit," indicating that Trovias himself had traded shares of FLDM based on the tip he had provided. In the same message, Trovias wrote that he was "still waiting the PFLT too and HTBX," meaning that he had traded shares of PFLT and HTBX and was waiting to cover a short sale or sell purchased shares for a profit.

---

[3]     Trovias sent additional tips concerning FLDM on January 14, 2019, and on February 14, 2020.

82.     On August 21, 2019, Trovias sent the FBI Agent a tip concerning SemiLEDs Corp. ("LEDS"), a U.S. company with securities traded on the NASDAQ exchange (Ticker: LEDS).

83.     Later that day, Trovias messaged the FBI Agent that LEDS had "[j]umped like crazy" and that Trovias "took profit," again making clear that he had traded shares of the stock for a profit.

84.     The FBI agent was located in the United States when he received all of these messages.

85.     For the reasons alleged herein, including in Paragraphs 21-22, 24, 32, 42, 49, 58, 62, 67, 73-74, 85, and 88, Trovias knew, recklessly disregarded, or had reason to know that the information that he was provided and traded upon concerning institutional purchases and sales was confidential and material, nonpublic information; that "the actual office clerk" (whether himself or a third party) had a duty of confidentiality not to disclose or use such information for his own personal use; that this information had been disclosed for a personal benefit (if a third party disclosed it) or misappropriated by Trovias for his own benefit (if he was privy to the information first-hand).

## C.     Trovias Sells Pre-Release Earnings Reports

86.     In addition to Trovias's sales of tips via the Dark Web, he also offered and sold unpublished earnings reports for Illumina Inc. ("Illumina") (Ticker: ILMN), a U.S. company with offices throughout the country, and Analogic Corporation ("Analogic") (Ticker: ALOG), a U.S. company, both of which were issuers listed on the NASDAQ exchange.

87.     On June 23, 2017, Trovias emailed the IRS Agent that he would soon have access to "some unpublished earnings reports."

88.     On July 10, 2017, Trovias informed the IRS Agent that he had obtained the earnings reports, and in a later communication the same day, explained to the IRS Agent that "the information is sensitive and more importantly illegal to use or share."

89.     That same day, Trovias wrote to the IRS Agent, "I'm trading some people [*sic*] capital myself and returning it with a profit"—demonstrating that Trovias traded using material, nonpublic information in his own account and/or for the accounts of others.

90.     On July 12, 2017, Trovias offered to sell the IRS Agent an unpublished earnings report for $5,000. Trovias predicted a "high percentage (~40%) profit" on trading using the information, in which he expressed the highest level of confidence, "10/10."

91.     In the same message, Trovias also offered another earnings report "upfront" in return for "a percentage of profit after the trades are done"—demonstrating that Trovias expected a personal benefit from providing the earnings report.

92.     On July 12, 2017, the IRS Agent responded to Trovias's suggestion to purchase the unpublished earnings report or to have Trovias trade money on his behalf by stating "we need to have a trust with each other." On July 13, 2017, Trovias responded stating that he and the IRS Agent could "continue with the subscription to build more trust"—demonstrating that Trovias sent at least some daily tips and the Illumina earnings report as described below to build trust between him and the IRS Agent.

93.     On August 1, 2017, at approximately 4:43 a.m. Pacific Time, although the IRS Agent had not paid him, Trovias sent the IRS Agent excerpts from Illumina's yet-to-be-released second quarter 2017 earnings report:

# Re: Stock Tip

Received: 🔒 **August 1, 2017 4:43 AM**

From: **Geobull geobull@protonmail.com**

To: ███████████████████

Hello ██████ i'm sending you an unpublished earnings report so you can check it out.

Ticker : ILMN (NASDAQ)
Expected release date : August 1 , 2017 after market
2nd quarter 2017
Total revenue was $662M,and EPS was $0.82
Full year 2017 outlook
Expected 12% revenue growth
GAAP earning per diluted share is expected to be $5.36~$5.46
Non-GAAP EPS is expected to be $3.60~$3.70

94.     Approximately 9 hours later, Illumina announced its quarterly earnings during a conference call. Consistent with Trovias's email, Illumina reported revenue of $662 million and diluted earnings per share of $0.82. Trovias also provided the correct numbers for Illumina's revenue growth estimate, earnings calculated according to Generally Accepted Accounting Principles or "GAAP," and non-GAAP earnings per share.

95.     Following the announcement, Illumina's stock price closed on August 2, 2017, at $197.85 per share, a 14.8% increase from the previous day's closing price of $172.30 per share.

96.     At the time, Illumina had a corporate policy that prohibited employees and consultants from the unauthorized disclosure or use of nonpublic information and expressly prohibited disclosure of material, nonpublic information for purposes of tipping other parties to trade.

97.     On August 23, 2017, Trovias wrote to the IRS Agent to inform him that he was obtaining access to more pre-release earnings reports and that "I can either trade your capital or hand you reports so you can trade yourself, i [*sic*] am already managing some people's

money"—demonstrating that Trovias traded using material, nonpublic information on his own account or for the accounts of others.

98.     Later in August 2017, in light of the accurate tip from Trovias, Trovias and the IRS Agent discussed plans for Trovias to sell the IRS Agent additional pre-release earnings reports.

99.     On September 6, 2017, Trovias agreed to sell the IRS Agent another pre-release earnings report for $5,000, to be paid in bitcoin.

100.    On September 14, 2017, the IRS Agent sent Trovias 1.298 bitcoin. The bitcoin was sent from a U.S. account, and the IRS agent was located in the United States at the time of all of his conversations with Trovias.

101.    Four days later, on September 18, 2017, Trovias sent the IRS Agent information concerning the forthcoming earnings report of Analogic for its fiscal year 2017 and fourth quarter of 2017:

## Re: Stock Tip

Received: 🔒 **September 18, 2017 6:04 PM**

From: **Geobull geobull@protonmail.com**

To: ███████████████████

Hey ███████ here it is

Ticker : ALOG (NASDAQ)
Expected release date : September 19 , 2017 after market
Fiscal year 2017
Total revenue was $538.083M, up 6% from the same period in the prior year.
GAAP Net income was $12.452, up 2.6% from the same period in the the prior year.
4th quarter 2017

Revenue for the 4th quarter of 2017 was $163.3M, compare with revenue of $138.1M in the 4th quarter of fiscal 2016.

The report is bullish. Let me know if you have any questions

102.    On September 26, 2017, Analogic released its earnings report for its fiscal year 2017 and fourth quarter of 2017, both of which ended on July 31, 2017. Although the earnings report contained the $538.083 million figure Trovias had provided to the FBI Agent, that figure was in fact the "total assets" line item in Analogic's earnings report, rather than the "total revenue" Trovias had told the FBI Agent. In addition, the 12.452 million figure that Trovias provided as the dollar amount of "GAAP Net income" actually corresponded to Analogic's earnings report as the number of "weighted-average shares outstanding."

103.    At the time, Analogic had a corporate policy that prohibited employees and consultants from the unauthorized disclosure or use of nonpublic information and expressly prohibited disclosure of material, nonpublic information for purposes of tipping other parties to trade.

104.    Trovias knew, recklessly disregarded, or had reason to know that the pre-release earnings reports were material, nonpublic information that had been disclosed in breach of a duty of confidence not to disclose such information.

105.    With respect to the source of his daily tips and earnings reports, if his tipper was an actual third party, Trovias knew, recklessly disregarded, or had reason to know that he provided, and his tipper obtained, a personal benefit from Trovias's acting as a vendor for his tipper as alleged in Paragraph 32. If Trovias was the insider, he obtained a personal benefit in the funds he received from selling the material, nonpublic information. And with respect to the Illumina earnings report, his tipper and Trovias obtained a personal benefit by using the report to gain the trust of the IRS Agent, which precipitated the payment for the Analogic report.

**D.    Trovias's Scheme to Establish a Dark Web Marketplace for Insider Trading Tips**

106.    During discussions with the FBI Agent and another undercover FBI agent, Trovias discussed building a website on the Tor network for users to share insider information

such as pre-release earnings reports. For example, on June 23, 2020, Trovias discussed with the two FBI agents how to develop the Tor website.

107.    Trovias worked with a third party to begin building the website and requested help from the two FBI agents.

108.    During his chats with the FBI agents, Trovias suggested that he would recruit insiders to auction material, nonpublic information on the site, acting as an escrow agent for the sellers and purchasers.

109.    In August 2020, Trovias suggested an in-person meeting with the two undercover FBI agents to further discuss establishing the Tor website.

110.    In August 2020 and after, Trovias agreed to meet the FBI agents in person to further discuss the plan to develop the Dark Web marketplace that would allow users to offer and purchase material, nonpublic information.

111.    Both FBI agents indicated to Trovias that they were located in the United States, and Trovias also told the FBI agents that he was based in the U.S.

112.    Trovias knew or was reckless in not knowing that users of the anticipated website would use it to sell or share material, nonpublic information, and that purchasers or other users would trade securities upon that information. Trovias knew or was reckless in not knowing that the material, nonpublic information that was to be shared on this darknet website would be obtained or shared in violation of duties to keep such information in confidence and that the tippers would receive a personal benefit in the form of compensation from the sale of such information.

**FIRST CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

113.     The Commission repeats, realleges, and incorporates by reference paragraphs 1 through 112, as though fully set forth herein.

114.     At all relevant times, Trovias knowingly or recklessly made untrue statements of material fact and engaged in deceptive conduct, acts, and practices by misrepresenting the source of the tips and claiming that they reflected information from an insider and that the tips were based on institutional trading orders by a trading firm.

115.     To the extent that Trovias did obtain trading tips from an insider at a trading firm based upon institutional order data, at all relevant times, Trovias knew or recklessly disregarded that the information he obtained concerning the trading books of money managers and/or market makers was material, nonpublic information.

116.     In addition, at all relevant times, Trovias knew or recklessly disregarded that the pre-release earnings reports were confidential and material, nonpublic information.

117.     At all relevant times, Trovias knew, recklessly disregarded, or had reason to know that providing and trading upon this material, nonpublic information was a breach of a duty of trust and confidence not to disclose it or use it for personal purposes—whether, if Trovias was obtaining the information from another person, that duty was his source's, or, if he was directly privy to the information, that duty was his own.

118.     If the tipper of the material, nonpublic information was in fact a third party, Trovias knew, recklessly disregarded, or had reason to know that he provided, and his tipper obtained, a personal benefit from Trovias's acting as a vendor for the information. As to the contemplated Tor website he was working to develop, Trovias knew, recklessly disregarded, or

had reason to know that his tippers would obtain a personal benefit in the form of compensation from the auctions on the website.

119.    Trovias received a personal benefit from disclosing the material, nonpublic information—i.e., payments from the IRS Agent, the FBI Agent, and his other customers.

120.    Trovias or a third party tipper knew or recklessly disregarded that purchasers of these tips and earnings reports traded or would trade securities on the basis of the information he provided, and, with respect to the Illumina earnings report, Trovias obtained a personal benefit by using the report to gain the trust of the IRS Agent, which led to the payment for the Analogic report.

121.    Trovias also engaged in deceptive conduct, acts, and practices by planning to establish a darknet website to facilitate the exchange of material, nonpublic information in breach of duties of confidentiality owed to the providers of that information.

122.    By virtue of the foregoing, Defendant, directly or indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, in connection with the actual or intended purchase or sale of securities, knowingly or recklessly, employed devices, schemes, or artifices to defraud, and engaged in acts, practices, and courses of business which operate or would operate as a fraud or deceit; and/or Defendant made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

123.    By virtue of the foregoing, Defendant violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder.

## SECOND CLAIM FOR RELIEF
### Injunctive Relief Pursuant to Section 21(d)(1) of the Exchange Act

124.    The Commission repeats, realleges and incorporates by reference paragraphs 1 through 112, as though fully set forth herein.

125.    By virtue of the foregoing, Defendant is about to engage in acts or practices that constitute a violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder, entitling the Commission to an order enjoining such acts and practices pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court grant the following relief:

### I.

A Final Judgment permanently restraining and enjoining Defendant, his agents, servants, employees and attorneys and other persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

A Final Judgment permanently restraining and enjoining Defendant, his agents, servants, employees and attorneys and other persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise from establishing and/or operating any website that permits the offer, sale, or purchase of nonpublic information concerning the issuers of publicly traded securities;

### III.

A Final Judgment directing the Defendant to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] or Section 21A(a)(2) of the Exchange Act [15 U.S.C. § 78u-1(a)(2)];

### IV.

Ordering the Defendant to disgorge with prejudgment interest all ill-gotten gains from the conduct alleged in this Complaint pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5), and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and (d)(7); and

### V.

Such other and further relief as this Court deems appropriate and necessary for the benefit of investors.

### **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated: New York, New York    SECURITIES AND EXCHANGE COMMISSION
   July 9, 2021

             By:   /s/ Richard R. Best      
               Richard R. Best
               Kristina Littman
               John O. Enright
               Victor Suthammanont
               Morgan B. Ward Doran
               Jon Daniels
               200 Vesey Street, Suite 400
               New York, New York 10281
               (212) 336-5674 (Suthammanont)
               Email: SuthammanontV@sec.gov

               Attorneys for Plaintiff

### SEC v. TROVIAS

### EXHIBIT A TO THE COMPLAINT

### Chart of Tips

| Issuer | Date | Short/Long | Instruction | Confidence Level |
|--------|------|-----------|-------------|------------------|
| MDXG | 5/17/2017 | SHORT | n/a | n/a |
| PTCT | 6/16/2017 | SHORT | Sell after the opening | 8 |
| WLB | 6/19/2017 | LONG | Buy after the opening | 7 |
| FNFV | 6/20/2017 | SHORT | Sell after the opening | 8 |
| NVCR | 6/21/2017 | SHORT | Sell after the opening | 8 |
| ZGNX | 6/22/2017 | LONG | Buy after the opening | 9 |
| CG | 6/23/2017 | LONG | Buy after the opening | 8 |
| BVXV | 6/27/2017 | SHORT | Sell after the opening | 8 |
| CCXI | 6/28/2017 | SHORT | Sell after the opening | 8 |
| EXTR | 6/29/2017 | LONG | Buy after the opening | 7 |
| LAKE | 6/30/2017 | SHORT | Sell after the opening | Be cautious |
| RUN | 7/3/2017 | SHORT | Sell after open at $7.20 | 8 |
| WIN | 7/5/2017 | LONG | Buy after the opening | 9 |
| PIRS | 7/6/2017 | SHORT | Sell after the opening | 8 |
| HDSN | 7/7/2017 | LONG | Buy after the opening | Be cautious |
| CORI | 7/10/2017 | SHORT | Sell after the opening | 9 |
| AGFS | 7/11/2017 | LONG | Buy after the opening | 8 |
| EVRI | 7/12/2017 | LONG | Buy after the opening | 8 |
| MITK | 7/13/2017 | SHORT | Sell around $9.80 after the opening | 8 |
| INAP | 7/14/2017 | LONG | Buy after the opening around $3.90 | 8 |
| QNST | 5/2/2018 | LONG | Buy after the opening | 8 |
| OFG | 5/3/2018 | SHORT | Sell after the opening | 8 |
| LOCO | 5/4/2018 | LONG | Buy after the opening | 7 |
| NTWK | 5/7/2018 | LONG | Buy after the opening | 8 |
| GLUU | 5/8/2018 | SHORT | Sell after the opening | 9 |
| ASYS | 5/9/2018 | LONG | Buy after the opening | 8 |
| RCM | 5/10/2018 | LONG | Buy after the opening | 9 |
| APPS | 5/11/2018 | LONG | Buy after the opening | 8 |
| TTOO | 5/14/2018 | SHORT | Sell after the opening | 8 |
| IOTS | 5/15/2018 | LONG | Buy after the opening | 9 |
| AIRG | 5/16/2018 | SHORT | Sell after the opening | 7 |
| HWCC | 5/17/2018 | LONG | Buy after the opening | 8 |
| NXEO | 5/18/2018 | SHORT | Sell after the opening | 9 |

| PNTR | 5/21/2018 | LONG | Buy after the opening | 8 |
|------|-----------|------|-----------------------|---|
| OSXQ | ~10/1/2018 | LONG | n/a | n/a |
| CGVI | ~10/1/2018 | LONG | n/a | n/a |
| OXSQ | 10/2/2018 | LONG | n/a | n/a |
| CVGI | 10/3/2018 | LONG | n/a | n/a |
| APPS | 10/4/2018 | LONG | n/a | n/a |
| INOV | 10/5/2018 | LONG | n/a | n/a |
| PFLT | 10/8/2018 | SHORT | n/a | n/a |
| ZFGN | 10/9/2018 | LONG | n/a | n/a |
| FLDM | 10/10/2018 | LONG | n/a | n/a |
| SPWH | 10/11/2018 | LONG | n/a | n/a |
| HTBX | 10/12/2018 | LONG | n/a | n/a |
| EZPW | 10/15/2018 | LONG | n/a | n/a |
| STLK | 10/16/2018 | SHORT | n/a | n/a |
| ASYS | 10/17/2018 | LONG | n/a | n/a |
| IVAC | 10/18/2018 | LONG | n/a | n/a |
| CWCO | 10/19/2018 | LONG | n/a | n/a |
| CFFN | 10/22/2018 | LONG | n/a | n/a |
| MEET | 10/23/2018 | LONG | n/a | n/a |
| EIGR | 10/24/2018 | LONG | n/a | n/a |
| FEIM | 10/25/2018 | LONG | n/a | n/a |
| CNTY | 10/26/2018 | LONG | n/a | n/a |
| MPAC | 10/29/2018 | LONG | n/a | n/a |
| AFSI | 10/31/2018 | LONG | n/a | n/a |
| GWRS | 11/1/2018 | SHORT | n/a | n/a |
| MAMS | 11/2/2018 | LONG | n/a | n/a |
| CHN | 11/5/2018 | LONG | n/a | n/a |
| BBBY | 11/7/2018 | LONG | n/a | n/a |
| EEP | 11/8/2018 | SHORT | n/a | n/a |
| CLPR | 11/9/2018 | LONG | n/a | n/a |
| GNK | 11/12/2018 | LONG | n/a | n/a |
| RUBI | 11/13/2018 | SHORT | n/a | n/a |
| CRNT | 11/14/2018 | SHORT | n/a | n/a |
| IMMY | 11/15/2018 | LONG | n/a | n/a |
| GRBK | 11/16/2018 | LONG | n/a | n/a |
| VCTR | 11/20/2018 | SHORT | n/a | n/a |
| DSWL | 11/21/2018 | LONG | n/a | n/a |
| QBAK | 11/26/2018 | LONG | n/a | n/a |
| CPRX | 11/29/2018 | LONG | n/a | n/a |
| BIOS | 11/30/2018 | LONG | n/a | n/a |
| CDTX | 12/3/2018 | LONG | n/a | n/a |

| DL | 12/4/2018 | LONG | n/a | n/a |
|---|---|---|---|---|
| PFSW | 12/10/2018 | LONG | n/a | n/a |
| MITK | 12/11/2018 | LONG | n/a | n/a |
| HLIT | 12/12/2018 | LONG | n/a | n/a |
| LOB | 12/13/2018 | SHORT | n/a | n/a |
| CCLP | 12/14/2018 | LONG | n/a | n/a |
| PBBI | 12/17/2018 | LONG | n/a | n/a |
| CPIX | 12/18/2018 | LONG | n/a | n/a |
| VRRM | 12/19/2018 | LONG | n/a | n/a |
| UXIN | 12/20/2018 | SHORT | n/a | n/a |
| RING | 12/21/2018 | LONG | n/a | n/a |
| RCMT | 12/26/2018 | LONG | n/a | n/a |
| SSRM | 12/27/2018 | SHORT | n/a | n/a |
| QUMU | 12/28/2018 | LONG | n/a | n/a |
| EBMT | 12/31/2018 | LONG | n/a | n/a |
| KIRK | 1/2/2019 | LONG | n/a | n/a |
| CCM | 1/3/2019 | LONG | n/a | n/a |
| BCBP | 1/4/2019 | LONG | n/a | n/a |
| NESR | 1/7/2019 | LONG | n/a | n/a |
| LBTYA | 1/8/2019 | LONG | n/a | n/a |
| FORK | 1/9/2019 | LONG | n/a | n/a |
| ESXB | 1/10/2019 | LONG | n/a | n/a |
| FLDM | 1/14/2019 | LONG | n/a | n/a |
| MENC | 1/15/2019 | LONG | n/a | n/a |
| MVC | 1/17/2019 | LONG | n/a | n/a |
| ALOT | 1/18/2019 | LONG | n/a | n/a |
| SHOS | 1/22/2019 | LONG | n/a | n/a |
| GVP | 1/23/2019 | LONG | n/a | n/a |
| CETV | 1/24/2019 | LONG | n/a | n/a |
| TRNS | 1/25/2019 | LONG | n/a | n/a |
| EPIX | 1/28/2019 | LONG | n/a | n/a |
| SFS | 1/29/2019 | LONG | n/a | n/a |
| PYDS | 1/30/2019 | LONG | n/a | n/a |
| CAMT | 1/31/2019 | LONG | n/a | n/a |
| SVBI | 2/1/2019 | LONG | n/a | n/a |
| CLDF | 2/4/2019 | LONG | n/a | n/a |
| DVAX | ~2/27/2019 | SHORT | Sell after the opening | n/a |
| ITI | 2/28/2019 | LONG | Buy after the opening | n/a |
| MOBL | 3/1/2019 | LONG | Buy after the opening | n/a |
| BCRX | ~3/5/2019 | LONG | Buy after the opening | n/a |
| DAVE | 3/5/2019 | LONG | Buy after the opening | n/a |

| MAMS | 3/6/2019 | SHORT | For a Short Today | n/a |
|------|----------|-------|-------------------|-----|
| RECN | 3/7/2019 | SHORT | Sell after the opening | n/a |
| HONE | 3/8/2019 | LONG | Buy after the opening | n/a |
| DCAR | 3/11/2019 | LONG | Buy after the opening | n/a |
| MNI | ~3/12/2019 | LONG | Buy after the opening | n/a |
| HCAP | 3/20/2019 | SHORT | Sell after the opening | n/a |
| ISNS | 3/21/2019 | SHORT | Sell after the opening | n/a |
| ORGS | 3/22/2019 | LONG | Buy after the opening | n/a |
| RESI | 3/26/2019 | LONG | Buy after the opening | n/a |
| ORMP | 3/27/2019 | LONG | Buy after the opening | n/a |
| IDSY | 3/28/2019 | LONG | Buy after the opening | n/a |
| AWRE | ~4/3/2019 | LONG | Buy after the opening | n/a |
| LAZY | 4/4/2019 | LONG | Buy after the opening | n/a |
| JCTCF | ~4/8/2019 | LONG | Buy after the opening | n/a |
| TST | ~4/9/2019 | LONG | Buy after the opening | n/a |
| DOGZ | 4/10/2019 | SHORT | Sell after the opening | n/a |
| CJJD | 4/11/2019 | SHORT | Sell after the opening | n/a |
| WHLRD | 4/12/2019 | LONG | Buy after the opening | n/a |
| NESR | ~4/15/2019 | LONG | Buy after the opening | n/a |
| IRIX | 4/16/2019 | LONG | Buy after the opening | n/a |
| GNUS | 4/17/2019 | LONG | Buy after the opening | n/a |
| MIND | ~4/26/2019 | SHORT | Sell after the opening | n/a |
| CTG | 4/29/2019 | LONG | Buy after the opening | n/a |
| CPSS | 4/30/2019 | LONG | Buy after the opening | n/a |
| BKTI | 5/1/2019 | LONG | Buy after the opening | n/a |
| PRTH | 5/2/2019 | LONG | Buy after the opening | n/a |
| KTCC | 5/3/2019 | LONG | Buy after the opening | n/a |
| SOI | 5/6/2019 | SHORT | Sell after the opening | n/a |
| GAIA | 5/7/2019 | LONG | Buy after the opening | n/a |
| AIRG | 5/8/2019 | LONG | Buy after the opening | n/a |
| MTBC | ~5/10/2019 | SHORT | Sell after the opening | n/a |
| ELMD | ~5/13/2019 | LONG | Buy after the opening | n/a |
| GPX | 5/14/2019 | SHORT | Sell after the opening | n/a |
| KRYS | 5/15/2019 | LONG | Buy after the opening | n/a |
| TLF | 5/16/2019 | LONG | Buy after the opening | n/a |
| IMXI | 5/17/2019 | LONG | Buy after the opening | n/a |
| VNCE | 5/20/2019 | LONG | Buy after the opening | n/a |
| CCO | 5/21/2019 | LONG | Buy after the opening | n/a |
| SNSS | 5/22/2019 | LONG | n/a | n/a |
| SPEX | 5/23/2019 | LONG | Buy after the opening | n/a |
| LINC | ~5/29/2019 | LONG | Buy after the opening | n/a |

| TRPX | 5/30/2019 | LONG | Buy after the opening | n/a |
|------|-----------|------|-----------------------|-----|
| AIRG | 5/31/2019 | LONG | Buy after the opening | n/a |
| ACTG | ~6/3/2019 | LONG | Buy after the opening | n/a |
| CFMS | 6/4/2019 | LONG | Buy after the opening | n/a |
| LIQT | 6/5/2019 | LONG | Buy after the opening | n/a |
| TBLT | 6/6/2019 | LONG | Buy after the opening | n/a |
| ZNGA | 6/7/2019 | LONG | Buy after the opening | n/a |
| CHMA | 6/10/2019 | LONG | Buy after the opening | n/a |
| WILC | 6/11/2019 | LONG | Buy after the opening | n/a |
| VCYT | 6/12/2019 | SHORT | Sell after the opening | n/a |
| VOXX | 6/13/2019 | LONG | Buy after the opening | n/a |
| VTNR | 6/25/2019 | LONG | Buy after the opening | n/a |
| VISL | 6/26/2019 | LONG | Buy after the opening | n/a |
| ATRS | 6/27/2019 | LONG | Buy after the opening | n/a |
| BYFC | ~6/28/2019 | LONG | Buy after the opening | n/a |
| ALTM | 7/1/2019 | LONG | Buy after the opening | n/a |
| CDXC | 7/2/2019 | SHORT | Sell after the opening | n/a |
| FTNT | 7/3/2019 | LONG | Buy after the opening | n/a |
| ALLY | ~7/5/2019 | LONG | Buy after the opening | n/a |
| SLGL | 7/9/2019 | SHORT | Sell after the opening | n/a |
| IFMK | 7/10/2019 | LONG | Buy after the opening | n/a |
| INSG | 7/11/2019 | LONG | Buy after the opening | n/a |
| TNP | ~7/12/2019 | LONG | Buy after the opening | n/a |
| MIND | 7/15/2019 | LONG | Buy after the opening | n/a |
| LIFE | 7/16/2019 | LONG | Buy after the opening | n/a |
| SIFY | 7/17/2019 | LONG | Buy after the opening | n/a |
| SESN | 7/18/2019 | LONG | Buy after the opening | n/a |
| ANIX | 7/22/2019 | LONG | Buy after the opening | n/a |
| SMSI | 7/23/2019 | LONG | Buy after the opening | n/a |
| HEBT | 7/25/2019 | LONG | Buy after the opening | n/a |
| NEON | 7/26/2019 | LONG | n/a | n/a |
| APPS | 7/29/2019 | LONG | Buy after the opening | n/a |
| LPTX | 7/30/2019 | LONG | Buy after the opening | n/a |
| HWCC | 7/31/2019 | LONG | Buy after the opening | n/a |
| SHORT | 8/1/2019 | SHORT | Sell after the opening | n/a |
| JRSH | 8/5/2019 | LONG | Buy after the opening | n/a |
| SLGL | 8/6/2019 | LONG | Buy after the opening | n/a |
| CASA | 8/7/2019 | LONG | Buy after the opening | n/a |
| UTSI | 8/8/2019 | LONG | Buy after the opening | n/a |
| BCLI | ~8/9/2019 | LONG | Buy after the opening | n/a |
| ALSK | 8/12/2019 | LONG | Buy after the opening | n/a |

| INOD | 8/13/2019 | LONG | Buy after the opening | n/a |
|------|-----------|------|----------------------|-----|
| RAND | 8/14/2019 | LONG | Buy after the opening | n/a |
| IOTS | 8/15/2019 | SHORT | Sell after the opening | n/a |
| LPCN | ~8/16/2019 | LONG | Buy after the opening | n/a |
| PXLW | 8/19/2019 | LONG | Buy after the opening | n/a |
| SENS | 8/20/2019 | LONG | Buy after the opening | n/a |
| LEDS | 8/21/2019 | LONG | Buy after the opening | n/a |
| PRTS | 8/22/2019 | LONG | Buy after the opening | n/a |
| ATAX | ~8/23/2019 | SHORT | Sell after the opening | n/a |
| GENE | 8/26/2019 | LONG | Buy after the opening | n/a |
| EPIX | 8/27/2019 | LONG | Buy after the opening | n/a |
| ERII | 8/28/2019 | LONG | Buy after the opening | n/a |
| DOGZ | 8/29/2019 | LONG | Buy after the opening | n/a |
| STCN | ~8/30/2019 | LONG | Buy after the opening | n/a |
| TUES | 9/2/2019 | LONG | Buy after the opening | n/a |
| TUES | 9/3/2019 | LONG | Buy after the opening | n/a |
| CLIR | 9/4/2019 | LONG | Buy after the opening | n/a |
| CJJD | 9/5/2019 | LONG | Buy after the opening | n/a |
| INSG | 9/6/2019 | LONG | Buy after the opening | n/a |
| SNSS | 9/9/2019 | LONG | Buy after the opening | n/a |
| CPRX | 9/10/2019 | LONG | Buy after the opening | n/a |
| JCS | 9/11/2019 | SHORT | Sell after the opening | n/a |
| UCFC | 9/12/2019 | SHORT | Sell after the opening | n/a |
| MACK | 9/13/2019 | SHORT | Sell after the opening | n/a |
| ITI | 9/16/2019 | LONG | Buy after the opening | n/a |
| RRD | 9/17/2019 | LONG | Buy after the opening | n/a |
| PRTS | 9/18/2019 | SHORT | Sell after the opening | n/a |
| CYRN | 9/19/2019 | LONG | Buy after the opening | n/a |
| PLUG | 9/20/2019 | SHORT | Sell after the opening | n/a |
| HMY | 9/23/2019 | LONG | Buy after the opening | n/a |
| NBSE | 9/24/2019 | SHORT | Sell after the opening | n/a |
| PESI | 9/25/2019 | SHORT | Sell after the opening | n/a |
| ATAX | 9/27/2019 | LONG | Buy after the opening | n/a |
| KOOL | 9/30/2019 | LONG | Buy after the opening | n/a |
| INSG | 10/1/2019 | LONG | Buy after the opening | n/a |
| GIFI | 10/2/2019 | SHORT | Sell after the opening | n/a |
| DSWL | 10/3/2019 | SHORT | Sell after the opening | n/a |
| VOXX | 10/4/2019 | LONG | Buy after the opening | n/a |
| BNSO | 10/7/2019 | LONG | Buy after the opening | n/a |
| APEN | 10/9/2019 | LONG | Buy after the opening | n/a |
| TOUR | 10/10/2019 | LONG | Buy after the opening | n/a |

| ASPU | 10/11/2019 | LONG | Buy after the opening | n/a |
|------|------------|------|----------------------|-----|
| ARTW | 10/15/2019 | LONG | Buy after the opening | n/a |
| SURF | 10/16/2019 | LONG | Buy after the opening | n/a |
| VVPR | 10/17/2019 | LONG | Buy after the opening | n/a |
| TCCO | 10/18/2019 | SHORT | Sell after the opening | n/a |
| IPWR | 10/21/2019 | SHORT | Sell after the opening | n/a |
| SMTA | 10/24/2019 | LONG | Buy after the opening | n/a |
| TOUR | 10/25/2019 | LONG | Buy after the opening | n/a |
| QRHC | 10/28/2019 | LONG | Buy after the opening | n/a |
| BASI | 10/29/2019 | LONG | Buy after the opening | n/a |
| INVE | 10/30/2019 | SHORT | Sell after the opening | n/a |
| RELL | 10/31/2019 | LONG | Buy after the opening | n/a |
| BLDP | 11/1/2019 | LONG | Buy after the opening | n/a |
| SOHO | 11/4/2019 | LONG | Buy after the opening | n/a |
| HOTH | 11/5/2019 | LONG | Buy after the opening | n/a |
| IOTS | 11/6/2019 | LONG | Buy after the opening | n/a |
| CRHM | 11/7/2019 | LONG | Buy after the opening | n/a |
| QTNT | ~11/8/2019 | LONG | Buy after the opening | n/a |
| GIGM | 11/18/2019 | LONG | Buy after the opening | n/a |
| CAAS | 11/19/2019 | LONG | Buy after the opening | n/a |
| EVOK | 11/20/2019 | LONG | Buy after the opening | n/a |
| OSCL | ~11/22/2019 | LONG | Buy after the opening | n/a |
| HHT | ~12/6/2019 | LONG | Buy after the opening | n/a |
| CTIC | 12/11/2019 | LONG | Buy after the opening | n/a |
| RNWK | 12/12/2019 | LONG | Buy after the opening | n/a |
| GTIM | 12/13/2019 | LONG | Buy after the opening | n/a |
| AVCO | 12/16/2019 | LONG | Buy after the opening | n/a |
| SYPR | 12/17/2019 | LONG | Buy after the opening | n/a |
| ACHV | 12/18/2019 | LONG | Buy after the opening | n/a |
| AEY | 12/19/2019 | LONG | Buy after the opening | n/a |
| CLMT | 12/20/2019 | LONG | Buy after the opening | n/a |
| ABDC | 1/31/2020 | SHORT | Sell after the opening | n/a |
| NEPH | 2/3/2020 | LONG | Buy after the opening | n/a |
| CWBC | ~2/4/2020 | SHORT | Sell after the opening | n/a |
| GPAQ | ~2/5/2020 | LONG | Buy after the opening | n/a |
| NICK | 2/7/2020 | LONG | Buy after the opening | n/a |
| RMNI | 2/13/2020 | LONG | Buy after the opening | n/a |
| FLDM | 2/14/2020 | LONG | Buy after the opening | n/a |
| MCHX | ~2/18/2020 | LONG | Buy after the opening | n/a |
| AGRX | 2/19/2020 | LONG | Buy after the opening | n/a |
| DAIO | 2/20/2020 | LONG | Buy after the opening | n/a |

| | | | | |
|------|-----------|-------|------------------------|-----|
| GNMK | 2/21/2020 | LONG  | Buy after the opening  | n/a |
| CENX | 2/24/2020 | LONG  | Buy after the opening  | n/a |
| TVTY | 2/25/2020 | SHORT | Sell after the opening | n/a |
| AQB  | 2/26/2020 | LONG  | Buy after the opening  | n/a |
| BCLI | 2/27/2020 | LONG  | Buy after the opening  | n/a |
| SMED | 2/28/2020 | SHORT | Sell after the opening | n/a |
| BMRA | 3/2/2020  | SHORT | Sell after the opening | n/a |
| FTAC | 3/3/2020  | LONG  | Buy after the opening  | n/a |
| BLDP | 3/5/2020  | SHORT | Sell after the opening | n/a |
| NCNA | 3/6/2020  | SHORT | Sell after the opening | n/a |