UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　**Plaintiff,**<br><br>　　-- against --<br><br>**APOSTOLOS TROVIAS,**<br><br>　　　　　　　　　**Defendant.** | 21 Civ. 5925 (ER)<br><br>ECF Case<br><br><u>COMPLAINT</u><br><u>AND JURY DEMAND</u> |

## CONSENT OF DEFENDANT APOSTOLOS TROVIAS
## TO FINAL JUDGMENT

1.　　Defendant Apostolos Trovias ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.　　Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. Apostolos Trovias*, 21 Crim. 378 (JFK) (S.D.N.Y.), Defendant pleaded guilty to a violation of 18 U.S.C. §§ 1348 and 2 ("Securities and Commodities Fraud"). In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent to Final Judgment ("Final Consent").  This Final Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. Trovias*.

3.　　Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

　　a)　permanently restrains and enjoins Defendant from (i) violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

b) permanently restraining and enjoining Defendant, his agents, servents, employees, and attorneys and other persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise from establishing and/or operating any website that permits the offer, sale, or purchase of nonpublic information concerning the issuers of publicly traded securities;and

c) orders Defendant to pay disgorgement in the amount of $5,320, plus prejudgment interest thereon in the amount of $1,382.49; to be deemed satisfied by the criminal judgment (DE 18) and forfeiture order (DE 19) entered by the Court in *United States v. Trovias.*

4.  Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.  Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.  Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.  Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.  Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9.      Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or

respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e),  Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations(iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.  Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or

her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

14.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: 05/19/2022                    _A Trovias_____
                                     Apostolos Trovias


On _____, 2022, _____, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.


                              _____
                              Notary Public
                              Commission expires:


Approved as to form:


_____
Samuel Scott Cornish
Calcagni Kanefsky LLP
85 Broad Street, Suite 17031
New York, NY 10004
(862) 397-1796
*Attorney for Defendant*

# EXHIBIT A

M4eWtroS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              21 Cr. 378 (JFK)

5    APOSTOLOS TROVIAS,
        a/k/a "The Bull,"
6
                  Defendant.
7                                             Plea and Sentence
     ------------------------------x
8
                                              New York, N.Y.
9                                             April 14, 2022
                                              11:15 a.m.
10

11   Before:

12
                        HON. LORETTA A. PRESKA,
13
                                              District Judge
14
                              APPEARANCES
15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   BY:  ANDREW M. THOMAS
          Assistant United States Attorney
18
     CALCAGNI & KANEFSKY, LLP
19        Attorneys for Defendant
     BY:  THOMAS R. CALCAGNI
20

21   Also Present:  Ellie Koteas, Interpreter (Greek)
                     Special Agent Zachary Williams, FBI
22

23

24

25

M4eWtroS

| 1 | THE COURT:  Would you be seated. |

1    THE COURT:  Would you be seated.

2    United States v. Trovias.

3    Is the government ready?

4    MR. THOMAS:  Yes, your Honor.

5    Good morning.  Andrew Thomas on behalf of the United

6 States.  I'm joined today by Special Agent Zachary Williams.

7    THE COURT:  Good morning.

8    Is the defense ready?

9    MR. CALCAGNI:  We are, your Honor.

10    Good morning.  Tom Calcagni from the law firm of

11 Calcagni & Kanefsky for Mr. Trovias, who is to my left.

12    THE COURT:  Good morning.

13    Good morning, sir.

14    Counsel, am I correct that you folks have determined

15 that Mr. Trovias wishes to change his plea?

16    MR. CALCAGNI:  That's correct, your Honor.

17    THE COURT:  Sir, would you stand and raise your right

18 hand.

19    Do you solemnly swear that the answers you will give

20 will be the truth, the whole truth and nothing but the truth,

21 so help you God?

22    THE DEFENDANT (in English):  I swear.

23    THE COURT:  Sir, do you understand that you're under

24 oath and that if you answer my questions falsely, your answers

25 may later be used against you in a prosecution for perjury or

M4eWtroS

1    the making of a false statement?

2              THE DEFENDANT (in English):  Yes.

3              THE COURT:  How old are you, sir?

4              THE DEFENDANT (in English):  31.

5              THE COURT:  Where were you born?

6              THE DEFENDANT (in English):  I was born in Larisa,

7    Greece.

8              THE COURT:  Are you a citizen of the United States?

9              THE DEFENDANT (in English):  No, I'm not.

10              THE COURT:  How far did you go in school, sir?

11              THE DEFENDANT (in English):  I have finished high

12    school, and I went to college, but I haven't finished college.

13              THE COURT:  Sir, if you would like to sit down so that

14    you're closer to that microphone.

15              And counsel, if it's all right with you, I'll ask

16    Mr. Trovias if he wants to take his mask off so he can be

17    heard.

18              MR. CALCAGNI:  Thank you, your Honor.

19              THE COURT:  Yes, sir.

20              Sir, I asked you how far you went in school.  Would

21    you repeat that answer again, please.

22              THE DEFENDANT (in English):  Yes.  I have finished

23    high school, and I went to college, but I haven't finished

24    college.

25              THE COURT:  Thank you.

M4eWtroS

1              And do you read, write, speak and understand English?

2              THE DEFENDANT (in English):  Yes, I do.

3              THE COURT:  I'll note for the record that we have our

4    Greek interpreter here today so that, sir, if you ever need her

5    to say something for you, let us know.

6              THE DEFENDANT (in English):  Yes.

7              THE COURT:  I note that she is interpreting

8    simultaneously.

9              Now, sir, are you currently or have you recently been

10   under the care of a doctor or a psychiatrist?

11             THE DEFENDANT (in English):  No.

12             THE COURT:  Have you been hospitalized or treated

13   recently for alcoholism, narcotic addiction --

14             THE DEFENDANT (in English):  No.

15             THE COURT:  -- or any other type of drug abuse?

16             THE DEFENDANT (in English):  No.

17             THE COURT:  Have you ever been treated for any form of

18   mental illness?

19             THE DEFENDANT (in English):  No.

20             THE COURT:  And do you feel well enough to understand

21   what you're doing here in court today?

22             THE DEFENDANT (in English):  Yes.

23             THE COURT:  Are you currently under the influence of

24   any substance such as alcohol, drugs, or any medication --

25             THE DEFENDANT (in English):  No, I'm not.

M4eWtroS

1          THE COURT:  -- that might affect your ability to

2     understand what you're doing here in court today?

3          THE DEFENDANT (in English):  No, I'm not.

4          THE COURT:  Very well.

5          Sir, have you gone over a copy of the indictment

6     against you, 21 Cr. 378?

7          (Counsel conferred with defendant)

8          THE COURT:  Do you have a copy of it, sir?

9          THE DEFENDANT (in English):  Yes, I have the written

10    one.

11         THE COURT:  And have you gone over it with your

12    attorney?

13         THE DEFENDANT (in English):  Yes, we did.

14         THE COURT:  And has your attorney explained to you the

15    charges against you?

16         THE DEFENDANT (in English):  Yes, he did.

17         THE COURT:  And have you told your attorney everything

18    you know about the matters that are set out in the indictment?

19         THE DEFENDANT (in English):  Yes, I did.

20         THE COURT:  You didn't hold anything back from him,

21    did you, sir?

22         THE DEFENDANT (in English):  No, I didn't.

23         THE COURT:  Very well.

24         Counsel, do I correctly understand that there is an

25    agreement between the defendant and the government, which is

M4eWtroS

1    dated April 5, 2022?

2              MR. THOMAS:  Yes, your Honor.  I have the original in

3    hand.

4              THE COURT:  Would you hand it up, please.

5              -- and which has been signed April 5, 2022.  Is that

6    right?

7              MR. THOMAS:  That's correct, your Honor.  And I note

8    for the record Mr. Trovias, in his dating of his signature --

9              THE COURT:  Yes.

10             MR. THOMAS:  -- used the European convention.

11             THE COURT:  Exactly.

12             May I ask the government to summarize, please, the

13   terms and conditions of the agreement.

14             MR. THOMAS:  Yes, your Honor.

15             Pursuant to the agreement, the government would not

16   further prosecute Mr. Trovias for his involvement in the online

17   sale of securities frauds -- in exchange for his online sale of

18   material nonpublic information in connection with the

19   securities fraud scheme, that is.

20             In exchange for his plea of guilty to Count One of the

21   indictment, the parties also set out a stipulated guidelines

22   range which the parties discussed and agreed would cover but

23   not mandate a sentence of time served; and that, further, the

24   parties acknowledge that Mr. Trovias has been in the custody of

25   Peru pending extradition in this matter for a number of months

M4eWtroS

1    and that that time ought to be credited or recognized by the

2    Court in considering its sentence.

3          THE COURT:  Yes, sir.

4          Mr. Trovias, are those the terms and conditions of the

5    agreement as you understand them?

6          THE DEFENDANT (in English):  Yes.  Yes, they are.

7          THE COURT:  And sir, do you understand that in this

8    agreement, you and the government have agreed to a stipulated

9    guidelines range of 10 to 16 months?

10         THE DEFENDANT (in English):  Yes.

11         THE COURT:  And sir, do you recall that in this

12   agreement, you have agreed not to appeal or otherwise litigate

13   a sentence that is within or below that 10- to 16-month range?

14         THE DEFENDANT (in English):  Yes, I agree with that.

15         THE COURT:  Sir, have you had enough time to discuss

16   the agreement and to talk it over with your lawyer and to have

17   all of your questions answered?

18         THE DEFENDANT (in English):  Yes, I did.

19         THE COURT:  Sir, I'm holding up the original of the

20   agreement, and I'm turning to the last page.  Is that your

21   signature over there on the left-hand side under the words

22   "agreed and consented to"?

23         THE DEFENDANT (in English):  Yes, it is.

24         THE COURT:  And am I correct, sir, that your

25   willingness to offer to plead guilty is, in part, a result of

M4eWtroS

1    this agreement between you and the government?

2               THE DEFENDANT (in English):  Yes, it is.

3               THE COURT:  Counsel, are there any additional

4    agreements between the government and the defendant which are

5    not set forth in the written plea agreement?

6               MR. THOMAS:  Your Honor, the plea agreement references

7    but does not expressly incorporate the terms of a consent order

8    of forfeiture.  The parties have also executed a copy of that

9    referenced document, and I can present that to the Court.

10              THE COURT:  Yes, sir.

11              And counsel, you agree with the government's

12   statement, correct?

13              MR. CALCAGNI:  I do, your Honor.

14              THE COURT:  Thank you.

15              Other than that, there are no agreements that are not

16   set forth, correct?

17              MR. THOMAS:  That's correct, your Honor.

18              MR. CALCAGNI:  Correct, your Honor.

19              THE COURT:  Thank you.

20              The agreement is acceptable to the Court.

21              Mr. Trovias, have you been induced to offer to plead

22   guilty as a result of any fear, pressure, threat or force of

23   any kind?

24              THE DEFENDANT (in English):  No.  It was my -- it was

25   my own choice, your Honor.

M4eWtroS

|     |                                                              |
|-----|--------------------------------------------------------------|
| 1   | THE COURT:  Have you been induced to offer to plead          |
| 2   | guilty as a result of any statements by anyone, other than in |
| 3   | your written plea agreement, to the effect that you'd get     |
| 4   | special consideration or special leniency or some kind of     |
| 5   | special treatment if you pleaded guilty rather than going to  |
| 6   | trial?                                                        |
| 7   | THE DEFENDANT (in English):  No.                             |
| 8   | THE COURT:  And sir, do you understand that you have         |
| 9   | the right to continue in your plea of not guilty and proceed to |
| 10  | trial?                                                        |
| 11  | THE DEFENDANT (in English):  Yes, I know that.              |
| 12  | THE COURT:  And do you understand that if you do not        |
| 13  | plead guilty, you have a right to a speedy and public trial by |
| 14  | a jury of 12 persons?                                         |
| 15  | THE DEFENDANT (in English):  Yes, I understand that.       |
| 16  | THE COURT:  Do you understand that you have the right       |
| 17  | to be represented by an attorney at trial and at every stage of |
| 18  | the proceedings, including an appeal, and if you cannot afford |
| 19  | an attorney, one will be appointed to represent you free of   |
| 20  | charge?                                                       |
| 21  | THE DEFENDANT (in English):  Yes.                           |
| 22  | THE COURT:  Sir, do you understand that if your plea        |
| 23  | of guilty is accepted, there will be no further trial of any  |
| 24  | kind?                                                         |
| 25  | THE DEFENDANT (in English):  Yes.                           |

M4eWtroS

1      THE COURT:  Do you understand that if you pleaded not

2   guilty and went to trial, upon such a trial, you would be

3   presumed innocent unless and until the government proved your

4   guilt beyond a reasonable doubt to all 12 jurors?

5      THE DEFENDANT (in English):  Yes.

6      THE COURT:  Do you understand that at such a trial,

7   you would have the right to confront and cross-examine all of

8   the witnesses called by the government against you?

9      THE DEFENDANT (in English):  Yes.

10      THE COURT:  And sir, do you understand that upon such

11   a trial, you could remain silent, and no inference could be

12   drawn against you by reason of your silence, or if you wanted

13   to, you could take the stand and testify in your own defense?

14      THE DEFENDANT (in English):  Yes.

15      THE COURT:  Do you understand that at such a trial,

16   you would have the right to subpoena witnesses and evidence for

17   your own defense?

18      THE DEFENDANT (in English):  I didn't understand this

19   question.

20      THE COURT:  Certainly.  Let me try it again.

21      Do you understand that if you decided to go to trial,

22   you could issue a subpoena and require witnesses to show up at

23   trial and evidence to be produced at trial?

24      Do you understand that, sir?

25      THE DEFENDANT (in English):  Yes, I understand that.

M4eWtroS

1   THE COURT:  Do you understand that if your offer to

2   plead guilty is accepted, you give up these rights with respect

3   to these charges against you, and the Court may impose sentence

4   just as though a verdict of guilty had been brought in against

5   you?

6   THE DEFENDANT (in English):  Yes.

7   THE COURT:  Sir, do you understand that if you wanted

8   to, and if the government agreed, you could have a trial before

9   a judge without a jury, in which event the burden of proof

10  would still be on the government, and you would still have the

11  same constitutional rights?

12  THE DEFENDANT (in English):  I understand.

13  THE COURT:  Sir, do you understand that upon your plea

14  of guilty to Count One, the Court has the power to impose upon

15  you a maximum period of imprisonment of 25 years; a maximum

16  period of supervised release of five years; a maximum fine of

17  the greatest of $250,000, twice the gross pecuniary gain

18  derived from the offense or twice the gross pecuniary loss

19  resulting from the offense; together with a $100 mandatory

20  special assessment?

21  THE DEFENDANT (in English):  I understand.

22  THE COURT:  And sir, do you also understand that in

23  this agreement you have agreed to forfeit the proceeds of the

24  crime in the amount of $6,700?

25  THE DEFENDANT (in English):  Yes, I agree.

M4eWtroS

1          THE COURT:  Sir, do you also understand that if the

2    terms and conditions of supervised release are violated, you

3    may be required to serve an additional period of imprisonment,

4    which is equal to the period of supervised release, with no

5    credit for time already spent on supervised release?

6          THE DEFENDANT (in English):  I understand.

7          THE COURT:  Sir, have you discussed the sentencing

8    guidelines with your attorney?

9          THE DEFENDANT (in English):  Yes, we did.

10          THE COURT:  All right.

11          I understand that both parties agree in this case to

12    dispense with the presentence report.  But do you understand

13    that you're not required to agree to dispense with it?

14          Do you understand that?

15          THE DEFENDANT (in English):  I understand that, yes.

16          THE COURT:  And do you also understand that you have a

17    right to a presentence report if you want one?

18          THE DEFENDANT (in English):  Yes.

19          THE COURT:  And am I correct that in this instance,

20    you, after talking with your lawyer, have decided that there's

21    no need for a presentence report?

22          THE DEFENDANT (in English):  Correct.

23          THE COURT:  Thank you.

24          Sir, do you understand that in determining a sentence,

25    it's the Court's obligation to calculate the applicable

M4eWtroS

1  sentencing guidelines range and then to consider that range,

2  possible departures from that range under the guidelines, and

3  other sentencing factors set out in the statute, 18 U.S.C.

4  Section 3553(a)?

5       THE DEFENDANT (in English):  Yes.

6       THE COURT:  And sir, do you understand that under some

7  circumstances, as set forth in your plea agreement, you or the

8  government might have the right to appeal whatever sentence is

9  imposed?

10       THE DEFENDANT (in English):  Uh --

11       THE COURT:  Do you want that one again?

12       THE DEFENDANT (in English):  About a sentence that's

13  not in the range, or it's outside of the range, or it's --

14       THE COURT:  Right.  All I'm asking you is whether you

15  understand that you or the government might have the right to

16  appeal whatever sentence is imposed.

17       THE DEFENDANT (in English):  Yes, I understand.

18       THE COURT:  And we went over the fact that, in your

19  plea agreement, you have agreed that you will not appeal or

20  otherwise litigate a sentence that is within or below that 10-

21  to 16-month range.  Remember that?

22       THE DEFENDANT (in English):  Yes.

23       THE COURT:  All right then.

24       Now, sir, do you also understand that parole has been

25  abolished, so if you're sentenced to prison, you will not be

M4eWtroS

1    released on parole?

2              THE DEFENDANT (in English):  Yes.

3              THE COURT:  Do you understand that you will not be

4    able to withdraw your plea on the ground that your lawyer's

5    prediction or anybody else's prediction as to the applicable

6    sentencing guidelines range or as to the actual sentence turns

7    out not to be correct?

8              THE DEFENDANT (in English):  Yes, I understand that.

9              THE COURT:  Do you understand that the offense to

10   which you are pleading guilty is a felony?

11             THE DEFENDANT (in English):  Yes.

12             THE COURT:  And sir, do you understand that because

13   you are not a citizen of the United States, your plea in this

14   case and your conviction make it very likely that your removal

15   from the United States is presumptively mandatory, and, at a

16   minimum, you will incur adverse immigration consequences from

17   your plea?

18             THE DEFENDANT (in English):  Yes.

19             THE COURT:  Thank you, sir.

20             Are you fully satisfied with the advice, counsel and

21   representation given to you by your attorney, Mr. Calcagni?

22             THE DEFENDANT (in English):  Yes.  Yes, I am

23   satisfied.

24             THE COURT:  Very well then.

25             Am I correct that you are offering to plead guilty

M4eWtroS

| | |
|---|---|
| 1 | because you are, in fact, guilty? |
| 2 | THE DEFENDANT (in English):  Yes, that's true. |
| 3 | THE COURT:  Sir, if you wish to plead guilty, I'm |
| 4 | going to ask you to tell me what you did, and as you can see, |
| 5 | your answers will be in counsels' presence and your answers are |
| 6 | being recorded on the record.  I remind you you're still under |
| 7 | oath, so if you answer falsely, your answers may later be used |
| 8 | against you. |
| 9 | Do you understand, sir? |
| 10 | THE DEFENDANT (in English):  Yes, I understand. |
| 11 | THE COURT:  And do you still wish to plead guilty? |
| 12 | THE DEFENDANT (in English):  Yes. |
| 13 | THE COURT:  Tell me what you did, Mr. Trovias. |
| 14 | THE DEFENDANT (in English):  I started -- I started -- |
| 15 | I assisted in a dark web market, as it's called, in 2016, and I |
| 16 | started selling information, which I marketed as nonpublic |
| 17 | information for the stock market.  At times I received and sold |
| 18 | nonpublic confidential business information about publicly |
| 19 | traded companies on the dark web through encrypted messaging |
| 20 | and email services. |
| 21 | THE COURT:  On the dark web through encrypted |
| 22 | messaging services, is that right, sir? |
| 23 | THE DEFENDANT (in English):  Yes. |
| 24 | THE COURT:  Go ahead. |
| 25 | THE DEFENDANT (in English):  I believed this |

M4eWtroS

1   information was misappropriated and used this information for

2   my own financial benefit.  I also took steps to create a

3   website through, through which I wanted -- my intention was to

4   extract money to trick and scam these two people that I was

5   working with.  And the website was marketed as a website that

6   would facilitate the exchange of inside information for

7   payment.

8               I knew my conduct to be wrong and unlawful.

9               THE COURT:  Yes, sir.

10              In terms of your selling the material nonpublic

11   information, it was your understanding that people were going

12   to use that to trade securities, is that right, sir?

13              THE DEFENDANT (in English):  Yeah, that's right.

14              THE COURT:  When did that happen, sir?

15              THE DEFENDANT (in English):  When?

16              THE COURT:  Was it in 2016 and thereabouts?

17              THE DEFENDANT (in English):  I started doing, doing

18   this thing at the end of 2016.  It was, I think, December 2016,

19   I assisted with marketplace, dark web marketplace.

20              THE COURT:  Yes, sir.

21              May I ask the government two things:

22              One, what is the venue requirement here?

23              And secondly, I'll ask you if there's anything further

24   by way of allocution.

25              MR. THOMAS:  Yes, your Honor.

M4eWtroS

1        Venue is proper in this case because, during the

2   course of the scheme, Mr. Trovias corresponded with individuals

3   in the Southern District of New York and understood by him to

4   be located in or around Manhattan.

5        THE COURT:  That's correct, isn't it, sir?

6        THE DEFENDANT (in English):  Yes.

7        THE COURT:  Thank you.

8        MR. THOMAS:  And second, your Honor, no need to

9   inquire of Mr. Trovias, but the government would proffer for

10   the record that some of the securities that were subject to

11   Mr. Trovias's scheme are those securities covered by Section

12   1348, meaning that they are registered under Section 12 of the

13   Securities Exchange Act.

14        THE COURT:  Very well.

15        Anything further by way of allocution?

16        MR. THOMAS:  No, your Honor.

17        THE COURT:  Would the government please recite the

18   elements it would have to prove if Mr. Trovias went to trial.

19        MR. THOMAS:  Yes, your Honor.

20        Were Mr. Trovias to proceed to trial on Count One,

21   which charges him under Title 18, Section 1348, the government

22   would have to prove three elements:

23        First --

24        MR. CALCAGNI:  I'm sorry, your Honor.  Could we pause

25   one second?  We're having an issue with the interpretation

M4eWtroS

1    equipment.

2               THE COURT:  Of course.  Thank you.

3               THE DEFENDANT (in English):  No, I cannot hear.

4               Still cannot hear.

5               THE INTERPRETER:  Just one minute, Judge.

6               THE COURT:  If you want, you're welcome to sit over

7    there.

8               THE INTERPRETER:  Me, the interpreter?

9               THE COURT:  Yes.

10              If that's all right with you too.

11              THE DEFENDANT (in English):  Yes, that would be

12   better.

13              THE COURT:  Thank you, Ms. Interpreter.

14              THE INTERPRETER:  Thank you, your Honor.

15              THE COURT:  Counsel, would you like the government to

16   start from securities registered under 12(a), etc.?

17              MR. CALCAGNI:  I think if we back up to the beginning

18   of the discussion about the elements.

19              THE COURT:  Yes.

20              May I ask the government to recite the elements the

21   government would have to prove if Mr. Trovias went to trial.

22              MR. THOMAS:  Yes, your Honor.

23              If Mr. Trovias proceeded to trial on Count One, which

24   charges him under Title 18, Section 1348, the government would

25   be required to prove three elements beyond a reasonable doubt:

M4eWtroS

1    First, that Mr. Trovias executed a scheme or artifice

2 either (a) to defraud a person, or (b) to obtain money or

3 property by materially false and fraudulent pretenses,

4 representations or promises;

5    Second, that Mr. Trovias knowingly and willfully

6 participated in the scheme or artifice; and

7    Third, the scheme or artifice was connected to the

8 purchase or sale of stock in a company whose securities were

9 registered under Section 12 of the Securities Exchange Act of

10 1934 or was otherwise required to file reports under the

11 Exchange Act.

12    THE COURT:  And sir, do you understand that those are

13 the elements that the government would have to prove if you

14 went to trial in this case?

15    THE DEFENDANT (in English):  Yes, I understand.

16    THE COURT:  Thank you.

17    Counsel, do you know of any valid legal defense that

18 would prevail if Mr. Trovias went to trial?

19    MR. THOMAS:  No, your Honor.

20    MR. CALCAGNI:  No, your Honor.

21    THE COURT:  And do you know of any reason why he

22 should not plead guilty?

23    MR. CALCAGNI:  No, your Honor.

24    THE COURT:  Very well then.

25    The plea is accepted.

M4eWtroS

| | |
|---|---|
| 1 | It's the finding of the Court in the case of the |
| 2 | United States v. Apostolos Trovias that the defendant is fully |
| 3 | competent and capable of entering an informed plea and that his |
| 4 | plea of guilty is knowing and voluntary and is supported by an |
| 5 | independent basis in fact containing each and every essential |
| 6 | element of the offense. |
| 7 | My findings are based on Mr. Trovias's allocution and |
| 8 | in addition, upon my observations of him here in court today. |
| 9 | The plea of not guilty is withdrawn.  The plea of |
| 10 | guilty to Count One is accepted and shall be entered.  The |
| 11 | defendant is now adjudged to be guilty of the offense. |
| 12 | Counsel, I understand that you wish to proceed |
| 13 | directly to sentencing.  Is that right? |
| 14 | MR. CALCAGNI:  That's correct, your Honor. |
| 15 | THE COURT:  Very well then. |
| 16 | Counsel, I have reviewed the documents before me, |
| 17 | which, other than the plea agreement and the indictment, |
| 18 | include the parties' respective letters, dated April 12, 2022. |
| 19 | I find pursuant to Federal Rule of Criminal Procedure |
| 20 | 32(c)(1)(A)(ii) that the information in the record allows the |
| 21 | Court to meaningfully exercise its sentencing authority under |
| 22 | 18 U.S.C. Section 3553(a). |
| 23 | Within the papers before me are discussions of the |
| 24 | offense conduct and of the history and characteristics of the |
| 25 | defendant. |

M4eWtroS

1            Accordingly, we will proceed directly to sentencing.

2            Counsel, would you like to speak on behalf of

3    Mr. Trovias?

4            MR. CALCAGNI:  Yes, your Honor.  Briefly.

5            THE COURT:  Yes, sir.

6            MR. CALCAGNI:  And thank you.

7            THE COURT:  You're welcome to go to the podium, use

8    that microphone and take your mask off if you want.

9            MR. CALCAGNI:  Thank you, your Honor.  I think I can

10   do it from here.

11           THE COURT:  Yes, sir.

12           MR. CALCAGNI:  First of all, thank you for

13   accommodating us with these expedited proceedings.  It's very

14   much appreciated, you and your staff.  Thank you.

15           THE COURT:  Yes, sir.  And Judge Keenan's staff.

16           MR. CALCAGNI:  And Judge Keenan's staff.

17           Mr. Ryan, thank you.

18           I won't belabor the points that are set out in our

19   sentencing memorandum of April 12, 2022, your Honor.  I did

20   want to emphasize that the 11 months' imprisonment that

21   Mr. Trovias has already served, 10 months of which were spent

22   in a Peruvian prison under conditions that can only be

23   characterized as deplorable, but those 11 months in total are

24   within the guideline range.  At the agreed-upon offense level

25   of 12, as we have discussed, that stipulated guideline range is

M4eWtroS

1    10 to 16 months.  And we'd ask, your Honor, that you credit

2    Mr. Trovias for that period in custody in sentencing him to

3    time served here.

4          I'll note that Mr. Trovias has accepted full

5    responsibility for his conduct.  He's demonstrated remorse.  He

6    surrendered to the jurisdiction of the United States in helping

7    to facilitate his extradition here to the U.S., and the moment

8    he was released from the Bureau of Prisons' quarantining, he

9    immediately met with the government.  He admitted his conduct.

10   He truthfully answered all questions asked, and he agreed to

11   plead guilty.

12         Should the Court sentence him to time served and allow

13   for his release, he will return home to Greece.  He'll secure a

14   job, and he'll care for his debilitated father, who suffers

15   from Parkinson's disease.

16         Given that he has no lawful status here in the U.S.

17   and would be deportable upon release, we'd also request that

18   your Honor waive any sentence of supervised release, which

19   would clear the way for him to immediately return to his father

20   and family in Greece.

21         I have nothing further, your Honor, although

22   Mr. Trovias stands ready to answer any questions and address

23   the Court directly at the right time.

24         THE COURT:  Of course.

25         Sir, would you like to speak on your own behalf?

M4eWtroS

1          THE DEFENDANT:  Yes.

2          (Counsel and defendant conferred)

3          MR. CALCAGNI:  Your Honor, Mr. Trovias has asked to

4    approach the podium and the microphone.  Would that be OK?

5          THE COURT:  Gents, is it all right if he speaks from

6    the podium --

7          THE MARSHAL:  Sorry, your Honor.

8          THE COURT:  -- and from that microphone?

9          THE MARSHAL:  We prefer this one, your Honor.

10          THE COURT:  Thank you.

11          THE MARSHAL:  But we could do that, if that's what you

12    want.

13          THE COURT:  That would be great, if you wouldn't don't

14    mind.  Thank you, Mr. Marshal.

15          Perfect.  Thank you.  At least we have some muscle

16    turning that thing around.

17          Yes, sir.

18          THE DEFENDANT (in English):  I'm here in front of you

19    today because I have failed.  I have failed primarily myself

20    and then the community that surrounds me, which is our world.

21          I was looking for shortcuts.  I wanted to run without

22    first knowing how to walk.  And I'm walking right now, almost

23    feeling like a child.  I am learning stuff, thinking creatively

24    and freely, and I am more interested in -- it fulfills me

25    more -- solving burdens instead of creating them, creating

M4eWtroS

1    solutions and enabling people.  It's like I am playing; I am

2    playing for real.

3              During the time that I was incarcerated in Peru, I got

4    to know myself better and discovered, between other things,

5    that I was lacking the required discipline in my life to set

6    goals and work daily to achieve them.  I have learnt that being

7    consistent in what you do leads in getting results, and the

8    effort that we put in -- day in, day out -- drive us to succeed

9    in the pursuing of happiness.

10             As an ancient philosopher of Greece used to say,

11   "Excellence is nothing but a habit."  And I finally got the

12   habit to believe -- believe in myself, believe in humans, and

13   the reason behind our sometimes painful but nevertheless

14   miraculous existence.  I know what is important now.  I know

15   what is real, and I'm grateful to be conscious about that.

16             As I used to say to my co-inmates in Peru during the

17   time of incarceration, in the morning I would say one more

18   day -- "one more day that we are prisoners, one more day that

19   we are alive"; and in the night, before the lockdown, "one day

20   less that we are prisoners, one day less that we are alive."

21             I wanted to highlight these dualities -- black and

22   white with good and bad -- that governs our life, and I wanted

23   to incorporate in this speech to let you know that I'm a little

24   wiser now.

25             Thank you for listening to me.

M4eWtroS

1          THE COURT:  Yes, sir.  Thank you.

2          THE DEFENDANT (in English):  Go back now?

3          THE COURT:  Yes, sir.  Thank you.

4          Thank you, Mr. Marshal.

5          Does the government wish to be heard?

6          MR. THOMAS:  Yes, your Honor.

7          The government would emphasize for the Court's

8   consideration a few points and facets of what is, I think, by

9   all accounts, a rather unusual set of circumstances.

10          The first is notwithstanding the relatively modest

11   dollar amounts involved, the conduct is nevertheless serious

12   and worthy of a guidelines sentence, and that's true because

13   Mr. Trovias engaged in a multiyear scheme that involved

14   evolving fraud throughout its duration, taking advantage over

15   time of new opportunities to perpetrate what was a steadfast

16   commitment to getting money through lies and deceit.

17          The second important facet of the conduct that the

18   Court ought to focus on is that, in many ways, Mr. Trovias is

19   at the cutting edge of criminality and that he made use of

20   modern tools, like cryptocurrencies, encrypted websites and

21   messaging platforms, to make it hard for law enforcement or

22   securities regulators to preserve the integrity of the market.

23   And so all of those factors combined make it a case where the

24   conduct is certainly worthy of a guidelines sentence.

25          All that being said, Mr. Trovias and, I think, his

M4eWtroS

| | |
|---|---|
| 1 | counsel are entirely correct that in many ways Mr. Trovias has |
| 2 | very quickly and unusually acknowledged his wrongful conduct |
| 3 | here.  He did agree to waive extradition proceedings in Peru to |
| 4 | hasten his arrival in the United States.  And he did, when he |
| 5 | came here, signal, even at his arraignment, to the court, in |
| 6 | magistrate court, that he was prepared to acknowledge his |
| 7 | responsibility.  So the government certainly recognizes that |
| 8 | those facets place him in an unusual category among defendants |
| 9 | in this space. |
| 10 | For those reasons, the government encourages the Court |
| 11 | to impose a guidelines sentence, and I'm happy to answer any |
| 12 | questions the Court may have. |
| 13 | THE COURT:  Thank you. |
| 14 | Counsel, with respect to the nature and circumstances |
| 15 | of the offense, certainly this is a serious offense and |
| 16 | requires a serious sentence to promote respect for the law. |
| 17 | Insider trading is an invidious crime and has the result of |
| 18 | undermining the confidence in the integrity of the financial |
| 19 | markets, which is very serious.  As the government has pointed |
| 20 | out, Mr. Trovias here took advantage of various technological |
| 21 | methods of hiding his conduct and making it more difficult for |
| 22 | securities regulators and law enforcement to detect.  So it |
| 23 | certainly is a serious crime. |
| 24 | In addition, I take into account the need for |
| 25 | deterrence.  I am persuaded that I don't need to worry about |

M4eWtroS

1    Mr. Trovias anymore, but general deterrence, particularly with

2    respect to crimes attacking the financial markets, is very

3    important.  So I certainly take deterrence into account.

4         With respect to the history and characteristics of the

5    defendant, up until this time, Mr. Trovias has been a

6    law-abiding citizen; educated himself, lived with his family,

7    certainly was a nonviolent person.

8         I also take into account his cooperation with law

9    enforcement, his waiver of extradition, his immediate offer to

10   accept responsibility for his crimes, and his intention to

11   depart this country immediately to go home and take care of his

12   father.

13        Considering all of those factors and the other

14   sentencing factors, it is my intention to impose a sentence of

15   time served.

16        Given Mr. Trovias's immigration status, it is not my

17   intention to impose any period of supervised release.

18        It is my intention to so order the consent preliminary

19   order of forfeiture/money judgment, and it is my intention to

20   impose the mandatory $100 special assessment.

21        Is there any reason such a sentence should not be

22   imposed, counsel?

23        MR. THOMAS:  No, your Honor.

24        MR. CALCAGNI:  No, your Honor.

25        THE COURT:  Very well then.

M4eWtroS

1          Mr. Trovias, you're sentenced, sir, to time served.

2          As I mentioned, there will not be a period of

3    supervised release.

4          I must impose and do impose the forfeiture amount and

5    the $100 special assessment, and that should be paid promptly.

6          It's my duty to inform you, sir, that unless you've

7    waived it, you have the right to appeal this sentence, and you

8    might have the right to appeal *in forma pauperis*, which means

9    as a poor person, with the waiver of certain fees and expenses.

10          Counsel, I am executing the forfeiture order as we sit

11   here and executing an order requiring Mr. Trovias to be

12   discharged from the custody of the marshals.

13          Is there anything else today, counsel?

14          MR. THOMAS:  Not from the government, your Honor.

15   Thank you.

16          THE COURT:  What about Count Two?

17          MR. THOMAS:  Oh, yes, there is something else, your

18   Honor.

19          The government moves to dismiss all open counts.

20          THE COURT:  Yes, sir.

21          Anything else, counsel?

22          MR. CALCAGNI:  That is all, your Honor.

23          THE COURT:  Very well.

24          Mr. Trovias, go home and make your father proud of

25   you.

M4eWtroS

1          THE DEFENDANT (in English):  Thank you.

2          THE COURT:  Yes, sir.  Good afternoon, sir.

3          MR. THOMAS:  Thank you, your Honor.

4          THE COURT:  Thank you, Mr. Marshal.

5          (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SECURITIES AND EXCHANGE COMMISSION,**

                        **Plaintiff,**

                 **-- against --**

**APOSTOLOS TROVIAS,**

                        **Defendant.**

**21 Civ. 5925 (ER)**

**ECF Case**

**FINAL JUDGMENT AS TO**
**DEFENDANT APOSTOLOS TROVIAS**

The Securities and Exchange Commission having filed a Complaint and Defendant Apostolos Trovias having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

**I.**

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

        (a)      to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would

operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in

Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who

receive actual notice of this Judgment by personal service or otherwise:  (a) Defendant's officers,

agents, servants, employees, and attorneys; and (b) other persons in active concert or

participation with Defendant or with anyone described in (a).

## II.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable

for disgorgement of $5,320, plus prejudgment interest of $1,382.49; to be deemed satisfied by

the criminal judgment (DE 18) and forfeiture order (DE 19) entered by the Court in *United States*

*v. Trovias*, 21 Crim. 378 (JFK) (S.D.N.Y.).

## III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, Defendant, his

agents, servants, employees, and attorneys and other persons in active concert or participation

with him who receive actual notice of the injunction by personal service or otherwise is

permanently restrained and enjoined from establishing and/or operating any website that permits

the offer, sale, or purchase of nonpublic information concerning the issuers of publicly traded

securities.

2

**IV.**

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of

exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the

allegations in the complaint are true and admitted by Defendant, and further, any debt for

disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this

Final Judgment or any other judgment, order, consent order, decree or settlement agreement

entered in connection with this proceeding, is a debt for the violation by Defendant of the federal

securities laws or any regulation or order issued under such laws, as set forth in Section

523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

**V.**

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

**VI.**

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Judgment forthwith and without further notice.

Dated: _____ July 19 ___, _2022_

_____
UNITED STATES DISTRICT JUDGE
HON. EDGARDO RAMOS

3